Please be seated. The next case is Robbins v. Illinois State Police Merit Board for the appellant, Mr. Maggio, and for the appellee, Mr. Baker. You may proceed. Good afternoon, your honors, and may it please the court. My name is Timothy Maggio. I'm an assistant attorney general, and this afternoon I represent the Department of State Police and the State Police Merit Board. Your honors, the nub of this appeal is straightforward. Officer Robbins engaged in an extended pattern of misconduct, some of it on the job, some of it off the job. None of it was accidental. It was all intentional. At the time she did it, she knew right from wrong, and her own witness said at the hearing that she was culpable for her conduct. So the Merit Board discharged her. And here on appeal, on administrative review, the Merit Board's decision should be upheld unless it's arbitrary, unreasonable, or unrelated to the needs of the service. And it's none of those. A reasonable person could conclude, in fact, a reasonable person would expect that a law enforcement officer who engaged in a one-year campaign of wrongdoing, which included criminal conduct, violating department rules, misuse of police power, and lying to state investigators, a reasonable person would expect that that person would be discharged. And so what we ask today, your honors, is that the decision of the circuit court be vacated and reversed, the earlier decisions, and that the decision of the Merit Board, discharged from Officer Robbins, be affirmed. With the court's permission, I'd like to spend just a few seconds talking about the facts. And not to go through them chapter and verse, because I know the court's been through them. But just to dispel a flavor in this case that somehow the conduct of Officer Robbins has no victims. Or worse yet, that somehow Officer Robbins is the victim. Because let's make no mistake, Officer Robbins is the perpetrator. She's not the victim. Let's talk about Ms. Morricone. Your honors, remember from the record, Ms. Morricone was attacked. She was slapped. Ms. Morricone received the telephone calls in the middle of the night. None of us like to receive phone calls in the middle of the night, right? You get the phone call in the middle of the night. Who is it? Who died? What happened? But this was even different, right? This was someone who called in the middle of the night, and there was nothing on the other end. Just breath. Just silence. And that silence said, you're not safe in your home. You're not safe in your bed. I'm awake. I'm watching you. I've got my eyes on you. Ms. Morricone was a victim. Ms. Morricone and Mr. Giannone, they were victims, as the court will recall. They had spent hundreds and hundreds of dollars in order to get travel tickets, airplane tickets back, after Officer Robbins posed as Ms. Morricone in order to cancel those tickets. So they were victims. The state police, her employer, is a victim. She was with the Internal Affairs Division, and she lied to state investigators. Remember, this was the story about how she was at Mr. Giannone's house, and she was worried about his property. And so she would see cars coming down the lane, and the first car she came down the lane, she didn't know who that was. And so she ran the license plate on that. Oh, and relieved to find out that that was Farmer Penrod. And then another car came down the lane, didn't know who that was, ran the license plate, and found out that it was Gilda Morricone, didn't know who that was, and so then ran the driver's license. Except it was all fake. It never happened. There was no Penrod car, Farmer Penrod, coming down the lane. She didn't run any license plate on Farmer Penrod, and she ran Ms. Morricone's driver's license by name well before she ever ran the license. That was fake. So the state police, the third victim. And the last victim of yours, and then I'll move on, the biggest one, the public. We expect our police officers to use their badges professionally for their job. We don't expect the police officers will go into the station house, turn on a state-owned computer, and start running investigations, leads, checks, et cetera. We don't expect that they will do that type of conduct against private individuals out of vendetta. But that's what happened here. So at the end of the day, we have a pattern of misconduct. And the court will recall that even the circuit court agreed that the misconduct had been substantiated. There was no question there. A pattern of misconduct that had a number of victims, and so the mayor board determined that Officer Robbins needed to be terminated. And we respectfully suggest this morning, Mr. Chairman and your honors, that that decision was perfectly sensible. Now, Officer Robbins comes back, and her principal argument and appeal is essentially, you need to take a look at my facts differently. I'm somehow like an officer who had a one-time tryst in his squad car. You need to see me in a whole different light. It's a variation on the old, you know, you think I'm bad, you ought to see what the other fellow did. But that doesn't work, and it doesn't work for at least two reasons. One, the mayor board thoroughly considered the evidence offered by Officer Robbins and rejected it. They said there's no comparables here, there's nothing, this is apples to oranges, certainly apples to oranges on all of them, and by the way, the notion that the mayor board ought to be compared to what the police department decides doesn't make sense anymore. They determined that there wasn't enough there. But separately, as a matter of law, Illinois courts have been very clear about the only time where comparisons get to come into the equation on administrative review. Comparisons get to come in where two people receive vastly different punishments for participating in the identical, completely related situation. Identical, completely related, same incident. How many more words can the courts come up with to make clear that the only comparison we're going to allow is that type of limited one? We're not going to allow comparisons where somebody comes in and says, well, you remember eight years ago there was a person who did this. Five years ago, a person that did that. We don't allow that. And to see how serious it was, I guess is the right way to say it, the Supreme Court is, when they say completely related, we've offered the Launius case, I may be mispronouncing it, L-A-U-N-I-U-S. And the court is aware of the facts in that case as a whole. In Launius, we had two police officers working for the same police department who violated orders on the same day, it was the same type of order, and it arose under the same factual circumstances. Remember, we had one officer who was fired, one officer who got a 40 suspension, the one officer was at the station house, and he wanted to go home in order to take care of his wife and kids because there was flooding in the area. And the chief said, no, you stay put. The second officer was at home, he was off that day, and he got an order to come in, come in and take care of him because the town's in and out of people, we have flooding, and he refused the order. He said, no, I'm not coming in, I want to stay home and take care of my family, there's flooding. Two officers, very, very close circumstances, and what did the Supreme Court say? Those two situations were not sufficiently similar to allow for any kind of meaningful comparison. If you have two officers, same police department, same order, they disobeyed on the same day, the same facts, and that's not close enough. Heavens to Betsy, how do we have any comparisons here when we're talking about a one-year pattern of multiple violations and somebody says, well, but there was a fellow, remember him 10 years ago? There was a fellow that had sex with this black guy one night. It simply makes no sense. Were you there in the trial court, Mr. Mancino, yourself? I was not, Your Honor, no. I'm wondering, you know, the cases that you're talking about, Lanius is one, how did Judge Kavanaugh misinterpret those? Well, I think Judge Kavanaugh, as best I can tell from his decision, Judge Kavanaugh simply sat back and said, well, I don't know, I think that there are people here who had egregious facts, right? I think that's sort of what he says. I think what they did was awful, worse, naughty, right? And that's the basis for his decision. But with respect, Your Honor, that is precisely the decision that the Supreme Court tells us, or the type of analysis, rather, that the Supreme Court tells us you're not supposed to do. The Supreme Court said, the government courts were not in the business of saying, oh, let's see, that's naughtier than this. Oh, let me do this. Two misdemeanors equals three violates, right? When we have some sort of ridiculous kind of chart. But that's precisely what I think the circuit court did. The circuit court, you know, I expect the circuit court looked at the precedent, but the circuit court simply decided that it was entitled to do this sort of comparative harm, comparative evil, comparative egregiousness. The other question I have is, there was a stipulation that this evidence would come in to the Merit Board. Why? Why would the side that's representing the Merit Board or the disciplinary agency agree to even offer that into evidence if it's not relevant? Your Honor, as best I can understand, and again, I wasn't there, but as best I can understand, it was a stipulation in terms of authenticity that these were the reports and that the State Police Department and the Merit Board argued against it, argued that before the administrative hearing and in the circuit court, argued in both times that these were apples to oranges comparisons and that they had nothing to do with it. So, I mean, I take Your Honor's point that maybe they should have just said, no, we're not going to stipulate. You put it in. My guess is that they're simply trying to be cooperative and say, yeah, that's authentic. You got the records from us, and so we're going to put them in, and then we'll just sort of duke it out in front of the hearing officers, as best I can tell. The last argument, if I may, and I'll come back to any of these if you wish, the last argument I make is this notion about depression. And Officer Robbins comes in and says, well, you need to take a look at my mitigating evidence, and I'd like you to sort of reassess it, reweigh it, and come to the conclusion that suspension is appropriate instead of discharge. But there's at least three or four problems with that. One, we have the situation we've already talked about. The Supreme Court has been clear, particularly in the case of evidence offered in mitigation, that we are not going to, under misreview, Officer Robbins doesn't get in to come in and ask that the courts reweigh or second guess. And I think it's the Sutton case, if I'm remembering correctly. The Sutton case was the one where the prison guard had conversations with prisoners, talking about, oh, we go ahead and assassinate the warden. And before the merit board, or before their version of the merit board, said, oh, you know, I was under, I think he said, deep frustration, or some phrase. I had this mental weight on my shoulders, and I shouldn't have said that. The Supreme Court said, no. It was presented below. It was considered below. We are not in the business of rethinking that. This is not a question about whether there's cause. Of course there's cause. The question is this sort of mitigation. And the court will know that there are plenty of Illinois cases that say, just because you put in mitigation evidence, it doesn't mean anything. The agency doesn't need to give that value. It's perfectly fine to discharge somebody, even if there is evidence of mitigation in the record. Second, the evidence here doesn't even support Officer Robbins' assertion. In the record, your honors have taken a look at the record. Dr. Lowe was examined. Dr. Lowe was examined by Officer Robbins. And they were studious. Studiously avoided asking Dr. Lowe any questions about what, you know, did Officer Robbins' depression cause what's happening here? They didn't ask. But on cross, Dr. Lowe says three things that are sort of interesting to us. One, that Officer Robbins was culpable. Culpable, right? Blameworthy, guilty, right? All these definitions in the dictionary, right? Second, that Officer Robbins knew right from wrong at the time she did it. And third, that she had control over her impulses. Maybe not as much control as you and I would have on a regular day, but she had control. She could have stopped what she was doing. She knew right from wrong. But she didn't. She didn't want to. She wanted to scare people. She wanted to hurt people. She wanted to destroy property. And she did. Third, even if that weren't the case. We don't have any cases that say that people are absolved of their wrongdoing because they're angry or they're sad. Officer Robbins hasn't given us not one. Not one. And I would suggest to this court that the rule is probably exactly the opposite. I don't do a lot of criminal law, but I suspect that if a criminal came into this court and said, well, you know, yeah, I attacked him or her, but I was angry. So I'll see you. I'm going to go home now, right? I don't think that person would get very far. You can't come in and ask for acquittal. You can't come in and ask for a lesser sentence because you were angry. And the last thing, then, just to touch upon, Your Honors, we do have these two cases from the Supreme Court. I think it's Walsh, Walsh, and then Kloss. And Walsh was a case where, you might remember, an officer accidentally shot another officer. And the Supreme Court was clear about one thing. If you take anything else from that case, the officer had to go. The officer had to be discharged. And in that case, it was a question, though, does the officer get discharged for cause, or does the officer get discharged for mental disability? The officer had earlier been on disability pension because of psychiatric problems. And so the court said, oh, heaven forbid, let's be fair, let's send it back and see if it should be cause or it should be discharge for psychiatric problems. We're not faced with that here. There aren't two choices here about the discharge that we need to choose from. This is discharge for cause based on a year-long campaign of wrongdoing. And there's no hint here about any kind of psychiatric discharge. Second was the Kloss case. And Kloss was a situation where, as the court, again, will recall, the court was concerned that the officer had taken some sort of medicine combination that he wasn't aware of, and it caused an adverse reaction. And so the court was concerned that maybe the reason why the officer engaged in wrongdoing was for some reason that the officer wasn't culpable for it. Two medicines, didn't know about, sort of clash. That's not us today either. Again, Officer Robbins always testified that Officer Robbins was culpable. So at the end of the day, Your Honors, I think we're sort of back almost where we've been with the Merriweather case out of this court. And at Merriweather, the court said, look, the merit board, at the end of the day, is in the best position. I think that was the phrase. Best position to decide these. They're closest to the facts. They're closest to the department. They understand what's needed, not just in terms of the discipline for this officer, but what types of messages to send to the other officers and send to the public. They're closest to it. They're in the best position. And so this court said that in those situations, I believe it was strong deference was the phrase. Today is no different. We would ask this court respectfully that the merit board that took a look at this, considered all of this evidence, follow the law in Illinois scrupulously. We would ask that this court defer to the discharge decision offered by that agency and that the court vacate and reverse the decisions out of the circuit court and affirm the decision from the merit board discharging Officer Robbins. If the court has no questions, I'll take my seat right now. If you're in. All right. Thank you, Your Honor. Thank you, Your Honor. We have pleased the court. My name is James Baker. I'm appearing this afternoon on behalf of Cynthia Robbins. This case, throughout this case, Ms. Robbins has been forthright in acknowledging her misbehavior. She did it before the merit board. She did it in the circuit court. And she is doing it here. She even did it during a series of investigatory interviews back shortly after the conflict occurred. Mr. Maggio is a little mistaken on the dates. This was not a year of misbehavior. There were periodic episodes of conduct on her part between late November of 2006 and the spring of 2007. The issue in this case is whether the merit board got it right with the penalty it imposed. We understand that the courts in an administrative review action need be differential to an agency's disciplinary finding, but not blindly differential. A penalty can be set aside if it's arbitrary, unreasonable, or unrelated to the requirements of the service. We believe that Judge Kavanaugh got it right when he said that was the situation here. Although I understand the court was reviewing the merit board decision rather than Judge Kavanaugh's, I think it's important to understand that Judge Kavanaugh didn't, in a righteously indignant manner, right away say, you're wrong, merit board, I'm setting aside discharge as a penalty. On three separate occasions, he considered the merits board discharge penalty. The first time he said, you don't have any findings of fact supporting the penalty. It doesn't comply with the Administrative Procedure Act. I'm sending it back for you to make detailed findings. The second time he said, merit board, you've not addressed any of the mitigating evidence in this case. Tell me why discharge is appropriate in view of discipline assessed against other officers. Why it's appropriate in view of Ms. Robbins' psychiatric condition and her efforts to recover. So it went back a third time. And the merit board came up with its rationale. And determining whether its opinion is arbitrary, unreasonable, or unrelated to the requirements of the service, I think the law is you have to look at the reasons the merit board used to justify discharge as a penalty. Ultimately, the circuit court imposed, or directed the merit board to impose a lesser discipline, and Ms. Robbins received a 180-day suspension. Longer substantially than any of the penalties assessed in the 11 cases that were before the merit board and other disciplinary situations. Now, in this case, Mr. Maggio spoke to Ms. Robbins' misbehavior. It's never been denied. In fact, Ms. Robbins was the primary witness of the state police and the merit board acknowledging her misbehavior. And I think it's noteworthy, though, that we go beyond the issue of misbehavior and talk about other undisputed evidence in this case. First piece of undisputed evidence is Ms. Robbins, at the time of the incidents and issue in this case, had worked for the state police for nearly eight years, had a good work record. The conduct at issue in this case was an aberration in her otherwise good behavior. That's undisputed. Second point, at the time of the incident and issue, and this is a very unusual situation, Ms. Robbins was suffering from major depressive disorder with anger as its paramount feature. That's undisputed. There was no evidence the other way. And it arose in an unusual situation, I won't get into the detail, where a long-term romantic relationship came to an end without any opportunity for closure. The third piece of undisputed evidence is that Ms. Robbins acknowledged her misbehavior. She underwent a criminal interview before ISP investigators. She didn't have to do it. She was Mirandized, and she acknowledged what she did. And she said, I take responsibility for my actions. If that means she loses this case, so be it. But she has never denied her misbehavior. The next undisputed point. Counsel, let me ask you this. Is your argument that because she fessed up, took accountability for her actions, the merit board should somehow disregard the actions in considering whether or not she's appropriate to remain in service as a police officer? That's not our sole argument. There are a number of factors we believe are relevant in determining why Ms. Robbins should be penalized, but not in the form of discharge. And if I may speak to them as I go along. The last piece of evidence is that Ms. Robbins, or actually two other pieces of undisputed evidence. First, Ms. Robbins made an effort to get better. She acknowledged her problems and sought out care. And finally, we have 11 instances where other officers of the Illinois State Police engaged in serious misconduct. And I'd like to speak to that for a moment. Before the merit board, it was stipulated what these other officers did. It came in the form of ISP disciplinary records. We used the ISP findings of what they did as a basis. And it was not one or two officers. There were over 11 instances of serious misconduct. Conduct involving felonies, conduct involving abuse to a minor, conduct involving various acts of physical misconduct, damage to property, conduct committed by individuals of relatively high rank in ISP. What about the case law that Mr. Maggio talks about? Judge, in our brief, we spoke to the cases Mr. Maggio has cited. And if one reads the cases, there is no case which says in all circumstances, other discipline is not relevant unless it is precisely the same. There are cases that have said another disciplinary incident is not relevant because it's too dissimilar. And if we were talking about one instance of discipline involving another ISP officer, I think his argument would be better made. In this case, we're talking about 11 instances. And let me tell you why I believe that is significant here. Discharge, in order to be sustainable, has to be related to the requirements of the service. And if you look at it, in first instance, it would be the employer that should make the determination as to whether the requirements of the service warrant discipline. And with respect to state police officers, the Merit Board, in assessing discipline, has involvement in that situation. We have 11 cases of serious misconduct. And I won't go through all of them here, but conduct ranging from writing multiple forged tickets, eavesdropping, criminal assault to a minor, and other very serious forms of misconduct. And according to my recollection, the most serious discipline assessed in any of those cases was a 45-day suspension. Now, what case do you have? Give me your best case that says you can compare discipline of X with discipline of Y from totally separate incidents and backgrounds. I don't think there is one case that says that. But I think if you look at the Lanius case, which has been cited by counsel, that dealt with one situation in which the court said, that's not enough. The whole issue, as I see it, is whether the requirements of the service warrant discharge for Ms. Robbins. And it seems to me that it's difficult to reconcile discharging Ms. Robbins for what she did when the most serious penalty assessed against any of these 11 other incidents was a 45-day suspension. Now, the state police, before the merit board, had an opportunity, had they chosen to elect it, to explain why discipline was warranted in the form of discharge in her case, but not in the others. And they never did that. The merit board's rationale for assessing discipline was that those cases were kind of like comparing apples to oranges. But if you look at it, they weren't. Well, many of them weren't even before the merit board. Never came before the merit board. They were disciplines issued by the director. That's true. That's true. In four of the cases, the merit board either assessed or approved the discipline. In the other case... Some of them, at least one of those was a settlement, right? It was a settlement, but if you look at the stipulations, Your Honor, they were very clear that it was subject to the approval of the merit board. And under the State Police Act, any discipline, which I believe is in excess of 30 days, has to be assessed by the merit board. So it was not a situation of rubber stamping this. The parties contemplated that the merit board would be looking into the appropriate penalty, and if the merit board disagreed with what the stipulation was, there would be no stipulation. The case would proceed to hearing. So it's not like the merit board was a potted plant. How do you even include, for comparison purposes, any case where the merit board did not meet out the discipline? Because in first instance, in determining whether the requirements of the service warrant discharge, that's made by ISP in seeking the penalty. The director of ISP in this case sought discharge, but in all the other cases, discharge was not sought. And it seems to me that the director of the Illinois State Police is probably in the best initial instance of determining what penalty was required by the service. And in this case, he said it was discharge. In all the other cases, it was something significantly less than discharge. So our argument basically is that given the other discipline, either approved by the merit board or not involved by the merit board, discharge was not related to the requirements of the service in Mr. Robbins' case. I'd like to turn to the psychiatric issues involving Ms. Robbins. It's undisputed in this case, both through the testimony of Dr. Lowe, a clinical psychologist who treated Ms. Robbins, and friends and co-employees who testified in the case that Ms. Robbins had a significant breakdown. Her friends called it a meltdown. She really went to pot. And Dr. Lowe diagnosed her to be suffering from severe depression, which he attributed to the demise of a relationship without any opportunity for closure. And it was his opinion that anger is a predominant feature of that depression. Now, it is true that Dr. Lowe did not say that Ms. Robbins was psychotic. Thank you, Your Honor. And that she did know the difference between right and wrong. But he also said that a person suffering from that condition, particularly when anger was your predominant feature, acts out impulsively and engages in behavior that is regrettable. Later, she regrets. Now, I asked the court, and the only case I think I'm going to cite right now is the Kloss case, which is the most recent Supreme Court decision concerning the correlation between psychiatric conditions and discipline. And it's pretty clear in the Kloss case, from the conclusion of that case, that an agency in considering discipline should consider, when warranted, the nature of a psychiatric condition that may have contributed to the misconduct. Now, the way the merit board got around that and justified discharging Ms. Robbins was they initially said, well, she shouldn't have been carrying a gun if she suffered from this condition. The reality is that there was no issue in this case involving her use or non-use of a firearm. It almost seems that that's kind of an arbitrary reason or an excuse for disregarding her psychiatric condition. The second we already talked about, and that is she knew the difference between right and wrong. And I don't think that really gets to grips with the issue. The third point that I think is noteworthy is that Ms. Robbins, in relatively quick order after her meltdown, realized there was something wrong. And in January of 2007, she sought out treatment with Dr. Thomas Lowe, a clinical psychologist. She saw Dr. Lowe over the span of one year through psychotherapy. And over time, she was able to improve. Now, the state police, or the merit board, excuse me, its initial conclusion was, well, she's still engaged in misbehavior after she saw Dr. Lowe, so the fact that she sought out treatment doesn't mean anything. Dr. Lowe's testimony, I think, was that there was no quick fix to her condition. You don't go in and see a psychotherapist on day one and day two, you're fine. It takes time to undergo therapy, and in Ms. Robbins' situation, there was a significant issue with her and her inability to seek closure in her relationship with her former companion. And that closure occurred when they were able to have a face-to-face meeting in the spring of 2007. And after closure, Dr. Lowe said it was kind of a breakout situation. He referred to a breakout session in July of 2007 where she was more in touch with her feelings and able to begin a more meaningful therapeutic process. And over time, she got better. I thought the merit board's issue with this was that Dr. Lowe had recommended she take psychiatric meds. She never followed up on that, or that she see a psychiatrist, I guess. And then the other thing, there was another point. Oh, she hadn't been totally forthcoming with him about all of the acts she had engaged in. That's true, that's true. And with respect to not being forthcoming and telling him everything, Dr. Lowe was not her confessor. Dr. Lowe was not the person that she had to confess all of her misdeeds to. He was her therapist. And Dr. Lowe never in his testimony indicated that to the extent Ms. Robbins did not tell him certain things, that impaired the therapeutic relationship or prevented her course of treatment from progressing. As to not seeing a psychiatrist, it's true. And Judge Kavanaugh took that into consideration in his opinion. He said it would have been better if she had followed his advice, Dr. Lowe's advice, to seek out the care of a psychiatrist. But nonetheless, that doesn't discount her efforts in seeking out treatment and making a meaningful effort over a year or two to recover. I think I'm close to the end of my time. Are there any questions? I don't think so. Thank you. Thank you. Mr. Roggio, rebuttal. Thank you, Your Honor. Just a few points. One, again, I don't want to sort of delve into the nitty-gritty of the factual details. The court knows that. But counsel said that Ms. Robbins was forthright with the police department. And that would be forthright except for when she was lying to them. We have a situation where she lied to police investigators. She lied to her employer. So I don't know where this forthright business comes from. Counsel also suggested that appellants have the timeline wrong and that this is a very small window of period, not a year. And the timeline in the case, and pardon me for referring to my notes here, December of 2006 and January 2007. Misuse of police powers. Battery. Changing locks on a house. Telephone harassment. May 2007. Cancel airline tickets. Flushing medicine down. Telephone harassment. June 2007. Canceling cell phones. Throwing keys in the river. December 2007. Lying to police investigators. So December 2006, December 2007. This is not some sort of rash, one-night-impulsive sort of thing. Second, or third, I suppose, counsel says there's sort of this history of felonious conduct, right? And it's just not there. There were no felonies found with respect to the people who were in front of the merit board for consideration. We pointed out in our brief there were, in the situation with state police, two of those people, only but two I believe it was, two, maybe three, were found to have committed criminal conduct. But none of the people in front of the merit board. And in our paper, in our reply brief, we point out, and, again, I won't give chapter and verse here, we point out situations where Officer Robin says, points to Mr. Hanson, one of the folks in front of the merit board, and said he engaged in battery, right? He engaged in battery. But I believe we pointed to page 1962 of the record, if I recall the page correctly, where the merit board or the hearing officer expressly finds that there was insufficient evidence to establish battery. So we can have conversations all we want this morning, this afternoon rather, about Officer Robin's take on some of the facts. But we're actually supposed to be talking about the record facts. And the record facts are that these other people who engaged in felonies didn't exist. Officer Robin, this afternoon, says there are no cases, no cases that talk about how there has to be identical situations for comparison. And we cited to a number of them, Seawick being one of them, right? And Seawick, at page, if I'm going to get this right, 738, right? Seawick contends that the board's decision to terminate her was arbitrary and unreasonable and seeks to support her contention, that contention rather, with citations to Illinois precedents in which police officers whose conduct was arguably worse than hers received less severe sanctions. The report goes on. Such conclusions are appropriate only, comparisons only, for when individuals receive different discipline in a single, identical, completely related case. We're not mistaken. We didn't make that up. That's the law in Illinois. Counsel spends a little bit of time trying to divert the comparison analysis from Lanius and all those others in talking about the needs of the service, right? What were the needs of the state police? Except there are at least two problems with that. One, it presupposes that the Supreme Court and the Illinois courts were just stupid, right? That there's this whole big body of law about comparisons. But it's only supposed to happen under the unreasonable, arbitrary prompt. It has nothing to do with the needs of the service. But more fundamentally, more fundamentally, you get to the same place. If you're comparing apples and oranges, you're comparing apples and oranges, right? I can't determine the needs of the service with an officer who is engaged in one year of criminal violations, rule violations, misuse of police power, lying, right? A whole year. How do I determine, how do I do any kind of needs of the service comparison by taking a look at an officer who had sex in his car one night? It simply doesn't make any sense. And I guess the last point I'll leave is with the situation with Dr. Lowe. Dr. Lowe, at the end of the day, you know, we talk about psychiatric. There's no psychiatric here, right? That's a nice word to throw out, but that's not what's happening here. Dr. Lowe examined Officer Robbins. And as the court's questions make clear, the merit board thoroughly discussed all the evidence in front of him. They thoroughly considered it, and they thoroughly discussed it. And they considered whether Officer Robbins was forthcoming, whether Officer Robbins was trying to take proper use of that situation. And as Your Honor pointed out, the merit board said, Well, actually, we have some reason to doubt the whole efficacy of the Dr. Lowe psychological treatment. Because Officer Robbins went in there and didn't give him the whole picture. And Officer Robbins got advice from him, and she didn't follow through. So we're not so sure about whether that was sort of a stage show, whether there's efficacy or not. I apologize, Your Honor. I apologize. We would ask that the merit board be affirmed, and that the circuit court be vacated. I apologize, Your Honor, for going off. No problem. I take this matter under advisement, and stand at recess until the merit board is ready for the next case.